J. Erik Heath, Esq. (SBN 304683)
100 Bush Street, Suite 1800
San Francisco, CA 94104
Telephone Number: (415) 391-2391
Facsimile: (415) 449-6556
Email Address: erik@heathlegal.com

Attorney for Plaintiff
**LEWIS MORALES**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS MORALES,<br>  Plaintiff,<br><br>v.<br><br>ELECTRONIC DOCUMENT PROCESSING, INC., d/b/a EDP LEGAL SERVICES, INC.; and PRESCOTT WOODFORD,<br>  Defendants. | Civil Action No. 3:16-cv-3770<br><br>**COMPLAINT**<br><br> (1) 15 U.S.C. § 1692 *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

Lewis Morales, Plaintiff, brings this action against the above defendants for regularly engaging in "sewer service," in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). The following allegations in support of these claims are based on personal knowledge, information and belief, and investigation of counsel:

<u>JURISDICTION AND VENUE</u>

1. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Venue is proper in the Northern District of California because a substantial part of the events giving rise to the claims occurred within the district. *See* 28 U.S.C. § 1391(b)(1).

3. This lawsuit should be assigned to the San Francisco Division of this Court because a substantial part of the events or omissions which gave rise to this lawsuit occurred in San Francisco County.

## PARTIES

4. Plaintiff LEWIS MORALES is a citizen of the United States, and currently lives in San Francisco, California.

5. Defendant ELECTRONIC DOCUMENT PROCESSING, INC., d/b/a EDP LEGAL SERVICES, INC. ("EDP"), is a California corporation engaged in the business of composing and selling forms, documents and other collection media used or intended to be used for debt collection. EDP's principal office is at 16700 Valley View Ave, Suite 440, La Miranda, California, and EDP may be served with process through its registered agent, Electronic Document Processing, Inc. c/o William Mitchell, 9160 Irvine Center Drive, Suite 200, Irvine, California, 92618.

6. Defendant PRESCOTT WOODFORD ("Woodford") is a natural person who is or was an employee of EDP at all relevant times. WOODFORD is in the business of composing and selling forms, documents and other collection media used or intended to be used for debt collection. WOODFORD may be served at his address at 1239 Liberty Street, Apartment 214, El Cerrito, California 94530.

## FACTUAL BACKGROUND

7. On January 21, 2014, an entity named Unifund CCR, LLC, ("Unifund") filed a civil action against Plaintiff in the Superior Court of San Francisco (Case No. CGC-14-536867), alleging that he owed a debt arising from a consumer credit card (the "State Court Lawsuit").

8. The debt alleged by Unifund was incurred primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

9. A Proof of Service was filed by fax in the State Court Lawsuit on February 19, 2014.

10. According to the Proof of Service, Defendant Woodford alleged to have served process personally on Plaintiff on Tuesday, January 28, 2014, at his residence: 1889 Page Street, San Francisco, California. The physical description of the person served is as follows: "MALE HISPANIC 37 YRS BLACK HAIR BROWN EYES 5'07" 165 LBS."

11. Defendant EDP is not listed by name on the Proof of Service, but Defendant Woodford listed his address as the principal office for EDP in La Miranda.

12. Upon information and belief, Defendant Woodford was acting as an employee and/or agent of EDP at the time of the purported service.

13. Plaintiff was never served personally with process in the State Court Lawsuit.

14. No one in Plaintiff's household was served personally with process in the State Court Lawsuit.

15. The physical description given by Defendant Woodford does not fit anyone in Plaintiff's household.

16. At the time of purported service in the State Court Lawsuit, Plaintiff would have been at work, as he worked every weekday at a downtown location of La Boulange, from 9:00 A.M. to 5:00 P.M.

17. Upon information and belief, the proof of service filed by Defendant Woodford was false.

18. On June 10, 2015, Unifund obtained a default judgment against Plaintiff in the total amount of $10,228.78 ($7,554.46 principal, $1,590.32 interest, $800.00 attorney's fees, and $284.00 costs).

19. Plaintiff did not become aware of the State Court Lawsuit, or its judgment, until approximately February 25, 2016, when his debit card was declined while trying to purchase a cup of coffee.

20. Plaintiff promptly called his bank to learn why his debit card was declined, and he was told there had been a Sheriff's levy on his account, but that was all the information the bank had at the time.

21. Approximately 20 minutes after his first phone call, Plaintiff called his bank again, and was given the contact information for Unifund.

22. Immediately after his second phone conversation with a bank representative, Plaintiff called Unifund. The Unifund representative informed Plaintiff that Unifund had a judgment against him with an amount owing of $10,708.58.

23. Plaintiff informed the Unifund representative that he had been unaware of any court judgments entered against him.

24. After being hit with the levy, Plaintiff suffered extreme emotional distress, arising from the embarrassment of not having a working debit card and the stress of not knowing what was happening to his personal finances.

25. Plaintiff sought legal advice, and hired an attorney to represent him in the State Court Lawsuit.

26. After investigating the matter further in March 2016, Plaintiff and his counsel discovered Defendants' Proof of Service filed in the State Court Lawsuit.

27. On March 29, 2016, Plaintiff filed a motion to set aside the judgment in the State Court Lawsuit based on the fraudulent service and lack of any notice to him about the pendency of the action.

28. On April 13, 2016, Unifund filed a Notice of Non-Opposition, indicating that it did not oppose Plaintiff's motion to set aside its judgment for lack of proper service.

29. On April 27, 2016, the Superior Court of San Francisco entered an order setting aside and vacating Unifund's default judgment entered against Plaintiff.

30. On May 16, 2016, Plaintiff filed a motion to quash service of the summons in the State Court Lawsuit based on the fraudulent service.

31. On June 2, 2016, Unifund filed a Notice of Non-Opposition, indicating that it did not oppose Plaintiff's motion to quash service of the summons.

32. On June 15, 2016, the Superior Court of San Francisco entered an order quashing the fraudulent service procedure on Plaintiff by Defendants.

## DEFENDANTS' BUSINESS PRACTICES

33. Defendants' false proof of service in Plaintiff's case is hardly an isolated event, but is a product of Defendant EDP's business model, which at all times relevant to this complaint, encouraged its process server agents to engage in "sewer service."

34. Defendant EDP advertises and markets process service and other legal support services to attorneys, law firms, debt collectors, government agencies, and the general public.

35. Defendant EDP handles all interactions with its clients, including but not limited to receiving marketing, service requests, and client billing.

36. Defendant EDP employs a number of registered process servers, such as Defendant Woodford, to carry out client requests to serve process.

37. The service of process is an integral part of EDP's business, and without the registered process severs in its employ, EDP could not offer such services.

38. Defendant EDP provides much of the support infrastructure for its process servers, including but not limited to the telephones, facsimile machines, computers, software and other equipment, support staff, and facilities.

39. Defendant EDP compensates its process servers based on a fee schedule, which provides considerably higher compensation for completed service attempts than for unsuccessful attempts.

40. Defendant EDP's fee arrangement enables it to receive a share of the profits realized by the activity of its process servers.

41. Defendant EDP composes the process server returns that it sells to its clients using its own computer systems and the data which is input into its computer systems via its websites by its customers, such as the law firm representing Unifund, and its process server agents, such as Defendant Woodford.

42. Defendant EDP maintains digital facsimile signatures of its process servers, including Defendant Woodford, within its computer systems.  Defendant EDP uses these digital facsimile signatures in the process server returns that it generates for clients.

43. By using digital facsimile signatures, Defendant EDP is able to generate process server returns efficiently which facially appear to have been signed by its process server agents, but which were never actually signed under penalty of perjury as required by California law.

44. Defendant EDP gives substantial assistance and encouragement to its process server, including Defendant Woodford by producing fully completed proofs of service which contain Woodford's facsimile signature and EDP's address and telephone number.

45. Upon information and belief, neither Defendant Woodford nor any of Defendant EDP's other process servers actually sign the completed proofs of service documents sold by EDP.

46. Upon information and belief, Defendant EDP controls its process servers, such as Defendant Woodford, by:

a. choosing which assignments each process server agent will receive;

b. requiring personal performance of the tasks assigned to its process server agents;

c. forbidding or severely restricting its process server agents' ability to substitute or assign their performance of the assigned tasks;

d. requiring the use of GPS tracking devices for its process server agents;

e. requiring detailed real-time reporting to Defendant EDP of all service attempts made by its process server agents;

f. requiring the use of Defendant EDP's computer systems and software for the performance of its process server agents' assigned duties; and

g. requiring its process server agents to maintain specified minimum automobile liability insurance and professional liability insurance coverage, that Defendant EDP be named as an additional insured in all such insurance policies, and requiring immediate notification from its process server agents should said insurance policies be canceled or not renewed.

47. Despite Defendant EDP's heavy role in the service of process for its clients, it does not include its own name or process server registration number on its proofs of service.

- 6 -
COMPLAINT

48. By excluding its name from the proofs of service, Defendant EDP misrepresents its own role in the service to the court, and hides its business from the view of the consumer.

49. Defendant Woodford was registered as a process server in San Francisco County under process server number 2012-0001257 from August 21, 2012 until August 21, 2014.

50. Defendant Woodford lent his name and facsimile signature to Defendant EDP for use on the Proof of Service of Summons that was generated and sold to Unifund's attorneys and used in the State Court Lawsuit against Plaintiff.

51. Defendant Woodford intended to act on behalf of Defendant EDP when he provided EDP with a digital facsimile of his signature with the knowledge that EDP would use his digital signature on process server returns.

52. A brief review of some of the proofs of service filed by Defendant Woodford contemporaneously with the State Court Lawsuit shows an alarming pattern. For example:

    a. Cases from Alameda County Superior Court:
        i. *Unifund CCR, LLC v. Guerrero* (Case No. RG14711472), service date February 2, 2014 at 1:50 P.M.;
        ii. *Unifund CCR, LLC v. Li* (Case No. RG14711447), service date February 2, 2014 at 2:10 P.M.;

    b. Cases from San Mateo County Superior Court:
        i. *Unifund CCR, LLC v. Seager* (Case No. CIV526417), service date February 4, 2014 at 2:42 P.M.;
        ii. *Unifund CCR, LLC v. Maquinana* (Case No. CLJ526381), service date January 31, 2014 at 12:17 P.M.;
        iii. *Unifund CCR, LLC v. Nadales* (Case No. CLJ526310), service date January 28, 2014 at 1:30 P.M.;
        iv. *Unifund CCR, LLC v. Liu* (Case No. CLJ526261), service date January 23, 2014 at 1:27 P.M.;

    c. Cases from San Francisco Superior Court:

      i. *Unifund CCR, LLC v. Hanna* (Case No. CGC-14-536954), service date January 31, 2014 at 11:51 A.M.;

      ii. *Unifund CCR, LLC v. Wong* (Case No. CGC-14-536952), service date January 31, 2014 at 11:26 A.M.;

      iii. *Unifund CCR, LLC v. Cook* (Case No. CGC-14-537001), service date February 4, 2014 at 12:58 P.M.;

      iv. *Unifund CCR, LLC v. Lam* (Case No. CGC-14-537085), service date February 11, 2014 at 12:03 P.M.;

      v. *Unifund CCR, LLC v. Vann* (Case No. CGC-14-536976), service date February 4, 2014 at 1:24 P.M.;

      vi. *Unifund CCR, LLC v. Garrett* (Case No. CGC-14-536975), service date February 4, 2014 at 11:52 A.M.;

      vii. *Unifund CCR, LLC v. Nabiev* (Case No. CGC-14-536977), service date February 4, 2014 at 12:42 P.M.;

      viii. *Unifund CCR, LLC v. Moniz* (Case No. CGC-14-536978), service date February 4, 2014 at 12:09 P.M.;

      ix. *Unifund CCR, LLC v. Domingo* (Case No. CGC-14-536812), service date January 23, 2014 at 11:58 A.M.;

      x. *Unifund CCR, LLC v. Pass* (Case No. CGC-14-536974), service date February 4, 2014 at 10:25 A.M.;

      xi. *Whitecliff Apts. v. Wei* (Case No. CGC-14-536866), service date January 28, 2014 at 10:35 A.M.;

53. Defendants' purported service in each of the cases in the preceding paragraph is consistent with a pattern of sewer service at the time relevant in this complaint for the following reasons:

    a.  *The success rate:* Defendant Woodford was able to serve each defendant *personally* on the *first attempt*, an impossible 100% success rate at personal service;

    b.  *The timing:* Defendant Woodford was able to accomplish his impossible success rate at the most improbable times, serving each defendant personally at their residence, during business hours, when many people are at work;

    c.  *The affidavits:* Defendant Woodford never signed any of the proofs of service in these cases, leaving only an identical facsimile signature on the service document (which is not allowed under state law); and

    d.  *The result:* Each of the above cases resulted in a default judgment, suggesting that the served individuals did not know about the lawsuits filed against them.

54.    The selected cases discussed in the preceding two paragraphs are only a sampling based on the cases that could be found after investigation by counsel. There are undoubtedly many more cases illustrating this pattern of "sewer service" at the times Defendants originally alleged to have served Plaintiff in the State Court Lawsuit.

55.    Defendant EDP approved of Defendant Woodford's unlawful conduct by continuing to employ him, even after learning that he engaged in "sewer service."

56.    Upon information and belief, Defendant EDP will pay its process servers, such as Defendant Woodford, for service attempts that are reported as completed, and pays substantially less (or nothing at all) for failed service attempts.

57.    Because Defendant EDP does not pay for unsuccessful service attempts, its process servers like Defendant Woodford have a strong financial incentive to falsify process server returns.

58.    Upon knowledge and belief, Defendant EDP knowingly promotes the use of false process server returns through its flat rate or fixed fee compensation system.

59. Defendant EDP charges its customers substantially less for process server returns than its local competition, and can only do so through its compensation system that encourages false process server returns.

60. Without Defendant Woodford and others holding themselves out as registered process servers and the apparent legitimacy of their registration numbers, EDP could not market and sell process server returns like the Proof of Service of Summons that was manufactured and sold to Unifund's attorney for use in the State Court Lawsuit against Plaintiff.

61. Upon information and belief, Defendant Woodford was the employee or agent of Defendant EDP at the time of these acts.

62. Upon information and belief, Defendant Woodford was acting within the course and scope of his employment or agency with Defendant EDP, and his acts were carried out with the permission and consent of Defendant EDP.

CAUSE OF ACTION:
FAIR DEBT COLLECTION PRACTICES ACT

63. Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

64. Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).

65. Defendant EDP is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692a(6).

66. Defendant Woodford is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692a(6).

67. Defendants did not actually serve, nor did they attempt to serve, process in the State Court Lawsuit, and are therefore not subject to the exception of 15 U.S.C. § 1692a(6)(D).

68. Defendant EDP uses the mail and telephone communications in its business.

69. Defendant Woodford uses the mail and telephone communications in his business.

70. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

    a. Using false, deceptive, or misleading representations in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e;

    b. Falsely representing services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt, in violation of 15 U.S.C. § 1692e(2);

    c. Using false representations to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692e(10); and

    d. Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f.

71. Plaintiff did not discover Defendants' FDCPA violations until March 2016, after Plaintiff learned of the underlying State Court Lawsuit, and conducted an investigation into it.

72. As a result of Defendants' actions, Plaintiff suffered actual damages, including emotional distress, financial costs related to the surprise post-judgment remedies inflicted upon him, and the costs of hiring an attorney and other fees to set aside the judgment and quash the service from the State Court Lawsuit.

73. Plaintiff is entitled to an award of actual and statutory damages, as well as an award of costs and attorney's fees, pursuant to 15 U.S.C. § 1692k.

//
//
//
//
//
//
//
//

WHEREFORE, Plaintiff, LEWIS MORALES, requests that this Court:

(a) Award Plaintiff statutory damages of $1,000, actual damages in an amount to be determined at trial, attorney's fees, litigation expenses, and court costs;

(b) Award pre-judgment interest on all sums collected; and

(c) Grant Plaintiff such other and further relief as is just and proper under the circumstances.

Dated: July 6, 2016                              J. ERIK HEATH, ATTORNEY AT LAW


                                                  */s/ Jon Erik Heath*
                                                 J. ERIK HEATH
                                                 Attorney for Plaintiff **LEWIS MORALES**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of each and every cause of action so triable.

Dated: July 6, 2016　　　　　　　　　　　J. ERIK HEATH, ATTORNEY AT LAW


　　　　　　　　　　　　　　　　　　　　　*/s/ Jon Erik Heath*
　　　　　　　　　　　　　　　　　　　　J. ERIK HEATH
　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff **LEWIS MORALES**